IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| GREG OBENDORF,<br><br>               Plaintiff,<br><br>v.<br><br>WASHINGTON MUTUAL BANK,<br>a federal association,<br><br>               Defendant. | CASE NO. CV-06-475-S-MHW<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

Currently pending before the Court is Defendant's Motion to Transfer Venue (Docket No. 9), filed January 9, 2007.

**I.
Background**

On November 27, 2006, Mr. Obendorf ("Plaintiff") filed his Complaint (Docket No. 1 at 5) naming Washington Mutual Bank as the Defendant. Plaintiff alleged various claims including: mutual mistake, breach of implied covenant of good faith and fair dealing, fraudulent misrepresentation, and failure to deliver. The case was removed to federal court pursuant to Defendant's Notice of Removal (Docket No. 1). Thereafter, Defendant made a Motion to Transfer Venue (Docket No. 9) to the District of Nevada.

**Memorandum Decision and Order - Page 1**

In April 2006, Plaintiff executed a Purchase and Sale Agreement ("Agreement") to acquire real property from Defendant located in Humboldt County Nevada. The Nevada real property consisted of approximately 2,095 acres of farm ground, 1,467.06 acres of which was designated as irrigable land. Prior to sale, water rights certificates and an appraisal were delivered to Plaintiff confirming that the 1,467.06 acres were irrigable. Plaintiff contends that the real property was expressly represented as irrigable and that wells and irrigation equipment were located on the property. At the time of sale, Plaintiff believed that the real property described above was irrigable.

In addition to real property, Plaintiff purchased various vehicles and pieces of equipment ("equipment") from Defendant, which he valued at $471,900. To date, some of the purchased equipment has not been delivered to Plaintiff.

The water rights associated with the purchased real property were cancelled or forfeited while Defendant was still in possession of title. Plaintiff asserts that he did not become aware of such cancellation until after the close of the transaction. Plaintiff argues that he paid for land valued at irrigable land prices, and, as a result, Plaintiff paid an inflated price for land that should have been valued at dry land prices. Plaintiff contends that the Defendant breached their contract by failing to exercise good faith and by making fraudulent representations regarding the real property.

## II.
## Standard of Law

Under 28 U.S.C. § 1404(a), a district court has the discretion to transfer a case to another venue. *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498 (9th Cir. 2000). Section 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court

**Memorandum Decision and Order - Page 2**

may transfer any civil action to any other district or division where it might have been brought." "[T]he purpose of [§ 1404(a)] is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964) (internal quotations omitted). In a motion to transfer venue, the burden is upon the defendant to "make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986). It is the court's duty to "balance the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum." *Id.* The courts must consider both the private and public interest factors at stake before transferring venue. *Id.*

Every motion to transfer warrants an "individualized case-by-case consideration of convenience and fairness." *Jones,* 211 F.3d 495 at 498. To aid in this analysis, the Ninth Circuit has developed a set of factors to determine when a transfer of venue is proper. *Id.* A court should consider:

> (1) the locations where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties's contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* at 498-99. In addition, the *Jones* court noted that plaintiff's choice of forum and relevant public policy of the forum state are significant factors in a § 1404(a) determination. *Id.* at 499.

Here, the Court concludes that the District of Idaho is a proper venue for this action and acknowledges that the action could also have been brought in the District of Nevada. The

remaining issue to determine is whether a transfer to the District of Nevada is warranted under the circumstances. In order to determine whether a transfer of venue is proper in this instance, the Court will address each of the *Jones* factors listed above.

## III.
## Analysis of Motion to Transfer Venue

**A.     Factor (1) - Location where the relevant agreements were negotiated and executed.**

Plaintiff states that the Agreement was negotiated and executed in Idaho. At "no point were negotiations conducted with anyone in Nevada, and the parties selected Idaho law as governing the Agreement." (Plaintiff's Memorandum in Response (Docket No. 10 at 3)).

Defendant argues that Nevada is the more relevant location because it is the location of the real property and equipment in question.[1] However, the location of the property is not what the Court is considering under the first *Jones* factor. The Agreement was negotiated in Idaho and execution was completed through the mail in Idaho. The parties agree that Idaho law was selected as the governing law under the Agreement. The Court finds that the Agreement underlying this litigation was negotiated and executed in Idaho, and thus factor one weighs against transferring.

**B.     Factor (2) - State that is most familiar with the governing law.**

While analyzing law from a different state is certainly not uncommon for a federal district court, it is nonetheless a factor to consider in transferring venue. *See Idaho Supreme Potatoes, Inc. v. Applied Financial, LLC,* 2006 WL 3365784 (D. Idaho 2006). Plaintiff has alleged four separate causes of action all arising out of the Agreement, and the parties have

---

[1] Plaintiff represents that not all of the equipment is located in Nevada, and that some pieces of equipment may be located in Oregon or elsewhere.

**Memorandum Decision and Order - Page 4**

concluded that the Agreement is governed by Idaho law.

The Court views this case as one primarily dealing with a contract dispute and not necessarily involving the intricacies of Nevada water law. However, the Court does recognize that questions regarding quit claim deeds and water right forfeiture could arise and would involve Nevada Law. Defendant argues that this case will raise substantial questions regarding water law and property rights that are unique to the state of Nevada. While the Court anticipates that this case will principally address questions regarding a contract dispute under Idaho law, it does acknowledge that questions interpreting Nevada law could arise. Accordingly, factor two probably tips in favor of Plaintiff but for purposes of this analysis the Court will treat it as neutral when deciding whether or not to transfer in this case.

**C.   Factor (3) - Plaintiff's choice of forum.**

Generally there is a strong presumption in favor of honoring plaintiff's choice of forum. *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.,* 61 F.3d 696, 703 (9th Cir. 1995). In this instance, Defendant claims that less weight should be given to Plaintiff's selection because it lacks significant contacts with the underlying cause of action. *Southern Utah Wilderness Alliance v. Norton,* 315 F. Supp.2d 82, 86 (D. D.C. 2004).

However, regardless of the ultimate venue decision, it appears clear that Idaho does have significant contacts with the underlying action. The Agreement was negotiated and executed in Idaho and is controlled by Idaho law. Plaintiff and the majority of key witnesses reside in and near Idaho. (Affidavit of Julie Klein-Fischer (Docket 10-1)). While Nevada has significant contacts with this action, it is very clear that Idaho has significant contacts as well. Thus, the standard of law requiring the party requesting the transfer to make a strong showing applies in

this case. *Decker Coal Co. v. Common Wealth Edison Co.,* 805 F. 2d 834, 843 (9th Cir. 1986). When considering the strong presumption in favor of honoring Plaintiff's choice of forum and the significant contacts that exist between the parties and this district, factor three weighs in favor of Plaintiff and against transfer.

D.  **Factors (4) & (5) - Parties's contacts with the forum and contacts relating to the plaintiff's cause of action in the chosen forum.**

The Agreement was negotiated and executed in Idaho with Idaho law being chosen to govern the agreement. Also notable is the fact that at the time of the parties' dealings, Defendant, Washington Mutual Bank was not conducting business in Nevada. On the other hand, Plaintiff purchased real property in Nevada and by so doing availed himself to the benefits of that state. While the case relates primarily to the causes of action arising from the Agreement between the parties, the case does also involve real property and equipment located in Nevada. The parties had contacts in both forums and factors four and five are neutral in the motion to transfer analysis.

E.  **Factors (6) & (7) - Differences in the cost of litigation in the two forums and availability of compulsory process**.

Both parties assert that their choice of forum is more convenient for all the parties concerned. Neither party has discussed in detail any specific differences in the cost of the litigation in one forum versus the other. Plaintiff has stated that most of the witnesses are located in or near the District of Idaho and the cost of traveling to and from Nevada would be much greater than if the case remained in Idaho. Defendant claims that the witnesses are largely spread out and thus it would not be any more convenient for the case to remain in Idaho.

"[T]ransfer should not be allowed if the party requesting transfer is merely attempting the

**Memorandum Decision and Order - Page 6**

shift the inconvenience from one party to the other." *Silver Valley Partners, LLC v. De Motte,* 2006 WL 2711764 at *4 (W.D. Wash. 2006). "The convenience of the witnesses is often the most important factor" in deciding whether to allow transfer. *Florens Container v. Cho Yang Shipping,* 245 F. Supp.2d 1086, 1092 (N.D. Cal. 2002) (*citing* 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 1381 at 264).

Counsel for Plaintiff submitted an affidavit (Affidavit of Julie Klein-Fischer (Docket 10-1)) identifying the locations of relevant witnesses, some examples of the witnesses are as follows: Greg Obendorf (Plaintiff), Parma, Idaho; Phillip Geertson, Adrian, Oregon (forty-eight miles from Boise); Jack Pratter (Plaintiff's real estate agent), Marsing, Idaho; Kenneth Brush (appraiser of Nevada property), Caldwell, Idaho; Roger Johnson (Washington Mutual Bank), Florida; Hugh Ricci and Robert Thayer (Nevada water engineers), Carson City, Nevada.

As stated previously, the Court views this case as one dealing with a claim for breach of contract, not a claim largely involving the Nevada Division of Water Resources. While questions could arise necessitating testimony from the Nevada engineers and possibly a couple of Nevada third party residents (concerning the location of the equipment purchased by Plaintiff), it is clear that the majority of relevant witnesses are closer to the District of Idaho and within its subpoena power. In addition, it was discussed at oral argument that perhaps some of the equipment in question is actually in Idaho and Oregon, which would employ even more third party witnesses near this district. Thus the cost and convenience of getting a couple of depositions from the state of Nevada is clearly more appropriate than taking several depositions from the District of Idaho and the surrounding areas. Accordingly, factors six and seven weigh against granting a transfer.

**Memorandum Decision and Order - Page 7**

### F.    Factor (8) - Ease of Access to Sources of Proof.

Again, the crux of this dispute arises from the Agreement between the parties and the interpretation of that contract.  Plaintiff argues that access to evidence in Nevada will not be needed or will be mostly limited to documents already possessed by the parties.  Defendant asserts that most of the evidence will be located in Nevada, the location of the real property and equipment.  Defendant contends that much of the evidence will need to come from sources such as, evaluations and records from the Nevada Water Resources department.

The Court agrees with Plaintiff that the parties may already possess much of the necessary evidence and any further evidence needed would likely be in document form.  "The location of documents will rarely weigh in favor of transfer because documents may be easily photocopied and shipped to wherever the documents are needed."  *PRG-Schultz USA, Inc. v. Gottschalks, Inc.,* 2005 WL 2649206 at *5 (N.D. Cal. 2005).  If there are additional document needed from the Nevada water engineers, those documents can be easily sent to this district.  Thus, the Court finds that factor eight also weighs against transfer.

### G.    Other factors - Companion Case.

The Court has not been persuaded by the Defendant that the *Geertson* case is vital to the outcome of this case.  This case concerns a dispute arising from a contract entered into between the parties.  As Plaintiff stated, if there is a valid agreement that has been executed between the parties regarding certain equipment that was purchased and not delivered, it is not Plaintiff's concern how Defendant obtains the promised property.  If the contract is determined to be valid, Defendant has the legal obligation to make good on the contract and deliver the property or pay damages for breach of contract.  It is not Plaintiff's duty to be involved in litigation determining

**Memorandum Decision and Order - Page 8**

ownership to equipment that was legally purchased from Defendants.

**H.     Public Policy Considerations.**

Both parties cite to federal district courts in support of their respective states' public policy interests. Defendant asserts that there is a strong local interest in having a case heard in the state where the property is located. *Southern Utah Wilderness Alliance v. Norton,* 315 F. Supp.2d 82, 88 (D. D.C. 2004). Plaintiff counters by claiming that states have a significant interest in deciding controversies governed by their laws. *United Air Lines, Inc. v. Mesa Airlines, Inc.* 8 F. Supp.2d 796, 798-99 (N.D. Ill. 1998). The Court agrees that each state has an interest in protecting the rights of its citizens. The court finds these considerations to weigh equally between the parties.

## IV.
## Conclusion

Plaintiff selected the District of Idaho as his chosen forum and Defendant has failed to meet its burden by making a strong showing sufficient to warrant transfer to the District of Nevada. This is a case concerning a dispute arising from an agreement that was negotiated and executed in Idaho with Idaho law being selected as the governing law. In analyzing the *Jones* factors, it is clear that it would not be more convenient for the parties or witnesses to transfer the case to the District of Nevada.

## **ORDER**

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1) Defendant's Motion to Transfer Venue to the District of Nevada (Docket No. 9), filed January 9, 2007, is **DENIED.**



DATED: March 14, 2007

Honorable Mikel H. Williams
United States Magistrate Judge