IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| GREG OBENDORF, | ) | |
| | ) | Case No. CV 06-475-S-MHW |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM DECISION** |
| WASHINGTON MUTUAL BANK, | ) | **and ORDER** |
| a federal association, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Currently pending before the Court are: (1) Defendant's Motion for Judgment on the Pleadings filed on May 1, 2007, (Dkt # 22), and (2) Plaintiff's Motion for Leave to File a First Amended Complaint filed on July 3, 2007 (Dkt # 31). The Court will first address the Motion for Leave to File a First Amended Complaint since the analysis of the Motion to Dismiss on the Pleadings will be predicated on whether the Court considers the allegations in the original Complaint, or the expanded allegations in the First Amended Complaint.

**I.
Motion to File First Amended Complaint.**

Both sides agree on the appropriate legal standard to be applied in deciding whether a party should be allowed to file an amended complaint. Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 15(a) provides that leave to amend should be allowed and, "be freely given when

Order -- Page 1

justice so requires." There are various factors for the court to consider when deciding whether to allow an amended complaint, such as: (1) would the amendment prejudice the opposing party; (2) is it sought in bad faith or with dilatory motive; (3) is it futile; (4) does it cause undue delay; or (5) have there been repeated attempts to cure the deficiencies by previous amendment. *Moore v. Kayport Package Express, Inc.,* 885 F.3d 531, 538 (9th. Cir. 1989).

In seeking to file his amended complaint, the Plaintiff, Greg Obendorf ("Obendorf") maintains his original pleadings were sufficient to withstand the pending motion to dismiss but he has now discovered additional facts which can now be plead in support of the allegations in his fraud and claim and delivery causes of action. The Defendant, Washington Mutual Bank ("Washington Mutual") opposes the Motion to Amend based on futility. Even with the proposed amendments, Washington Mutual contends that three out of the four claims remain insufficiently pled. Additionally even if all four claims were now consider properly pled, Washington Mutual asserts that Obendorf cannot escape the impact of the express terms of the March 8, 2006 Purchase and Sale Agreement and Escrow Instructions ("Agreement") entered into between Obendorf and Washington Mutual.[1] Washington Mutual asserts that the property was sold "as is," "where is," "with all faults" and only transferred title to the farm machinery and construction equipment physically located on the farms at the date of closing.

Recognizing the leave to amend should be freely granted, the Court will grant the Motion to File a First Amended Complaint. Washington Mutual's arguments concerning futility and whether the language of the Agreement between the parties bars Obendorf's claims are best analyzed in connection with the pending motion to dismiss.

---

[1] In the First Amended Complaint, Obendorf alleges that he entered into the Agreement in April of 2006; however, the Agreement is dated March 8, 2006.

**Order -- Page 2**

## II.
## Procedural and Factual Background.

Obendorf originally sued Washington Mutual in state court asserting four causes of action: Count One, mutual mistake; Count Two, breach of the covenant of good faith and fair dealing; Count Three, fraudulent misrepresentations; and Count Four, claim and delivery. Washington Mutual removed the case to federal court on the grounds of diversity and sought a change of venue, which the Court has previously denied. *See* Dkt # 15.

The following recitation of facts is derived from the allegations in the First Amended Complaint. Obendorf's alleges that he entered into the Agreement with Washington Mutual to purchase land located in Idaho, Oregon and Nevada for a total purchase price of $4,250,000. Also included in the sale were various items of farm machinery and other equipment located on the Nevada and Oregon properties.

The real property that is involved in this dispute was the farm located in Humboldt County, Nevada. The Nevada property contained 2,095 acres of farm ground, of which 1,467.06 had been formerly irrigated. The Nevada property had been appraised on September 6, 2005 and had a fair market value of $1,025,000. The appraisal indicated that 1,467.06 acres were irrigable and express representation were made to Obendorf and or his agent, that the land was irrigable. Washington Mutual provided copies of the water right certificates issued by the State of Nevada along with a copy of the appraisal sometime in October 2005 and February 2006. As mentioned, Obendorf also purchased from Washington Mutual in the same agreement various items of farm machinery, trucks and trailers, construction equipment and tractors and combines for $471,900. Prior to the sale, Obendorf and/or his agent had been provided with an appraisal of this equipment, which supported the purchase price.

Citing the land appraisal and other representations by Washington Mutual, Obendorf asserts that the price the parties agreed upon was based on the value of the land with irrigation. After he purchased the land from Washington Mutual, Obendorf learned that the previous owners had allowed the water rights to lapse. Accordingly, to the State of Nevada, the land no longer had valid water rights.

In the contrast, Washington Mutual relies on the express language of the Agreement that it was selling the property "as is" at the time of closing and was making no "[R]epresentations or warranties with respect to the physical condition or any other aspect of the Property, including, without limitation, water rights......". *See* Exhibit A, Paragraph 7(a), to Affidavit of Jean M. DeFond, Dkt # 9. It also stated that it had provided documents to Obendorf merely as a courtesy and that such documents could not be used to bind it to anything to which it did not expressly agree in the contract. *Id.* at Paragraph 7(d). Finally, Washington Mutual argues that Obendorf is only entitled to whatever farm machinery and other equipment that was physically on the properties at the date of closing.

Obendorf asserts that, at the time of the Agreement, Washington Mutual either shared his belief that the land was irrigated or, in the alternative, knew that it was no longer irrigated but wrongfully withheld that information from him. These alternative theories are the basis for his separate claims for mutual mistake and fraud. The First Amended Complaint also alleges that Washington Mutual violated the implied covenant of good faith and fair dealing associated with the Agreement between the parties. Finally, Obendorf's Amended Complaint includes a count alleging that Washington Mutual failed to deliver all of the farm equipment that was part of the sale.

Washington Mutual has moved for judgment on the pleadings on all of Obendorf's claims.

### III.
### Applicable Law.

Idaho substantive law and federal procedural law apply in this diversity case. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). The federal rules permit judgment on the pleadings if, "taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *McGann v. Ernst & Young*, 102 F.3d 390, 392 (9th Cir. 1996); Fed. R. Civ. P. 12(c). Federal Rule of Civil Procedure 10(c) defines pleadings broadly to include "any written instrument which is an exhibit to a pleading." Fed. R. Civ. P. 10(c). In the analogous 12(b) context, precedent has extended the rule somewhat, to include documents on which the complaint relies, even if not included in the pleadings, as long as their "authenticity no party questions, but which are not physically attached to the plaintiff's pleadings." *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1998).

The matters integral to the pleadings and whose authenticity has not been challenged are: the Agreement, the land appraisal and the description of the personal property included in the sale. The Court will therefore consider these items in its analysis of the motion to dismiss.

Rule 12(c) provides "a means of disposing of cases when the material facts are not in dispute between the parties and a judgment on the merits can be achieved by focusing on the content of the pleadings, exhibits thereto, matters incorporated by reference in the pleadings, whatever is central or integral to a claim for relief or defense, and any facts of which the district court will take judicial notice." Wright & Miller, FED. PRAC. & PROC. CIVIL 3D § 1367 ns. 4 & 5 (2004).

It is also important to keep in mind that the Federal Rules of Civil Procedure have adopted a system of notice pleadings. This does not require that a plaintiff set out in detail each fact upon which his claim is based in his complaint. *Conley v. Gibson,* 355 U.S. 41, 47 (1957). This standard is best summarized by a recent decision from the Ninth Circuit:

> Our review of the district court's orders dismissing plaintiffs' federal claims with prejudice is governed by the federal system of notice pleading under Fed.R.Civ.P. 8(a). Rule 8(a)(2) states that a "pleading which sets forth a claim for relief ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The Supreme Court has stated that "the Rule mean[s] what it sa[ys]." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). As the Court explained:
>
> [Under] the liberal system of "notice pleading" set up by the Federal Rules [,] Rule 8(a)(2) ... do[es] not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.

*Lee v. City of Los Angeles,* 250 F.3d 668, 679 (9th Cir. 2001).

The Court will apply this standard in determining whether the allegations in the First Amended Complaint have been sufficiently pled.

## IV.
### Discussion.

**A.     Legal Sufficiency of Counts Two, Three and Four as alleged in First Amended Complaint.**

Washington Mutual argues that Obendorf has failed to correct the legal deficiency of three of the four claims, even after an opportunity to file a First Amended Complaint. The claims at issue are: Count Two, Breach of the Implied Covenant of Good Faith and Fair Dealing; Count Three, Fraudulent Misrepresentation; and Count Four, Claim and Delivery.

In its Motion for Judgment on the Pleadings, Washington Mutual argues the breach of the

**Order -- Page 6**

implied covenant of good faith and fair dealing fails to reference any instance of misconduct by Washington Mutual that can serve as the basis for an alleged violation, nullification and/or significant impairment of Obendorf's contractual rights.  Washington Mutual argues that the First Amended Complaint has not cured these deficiencies.

      The Court finds that Obendorf has alleged sufficient facts to plead a claim for breach of the implied contract of good faith and fair dealing.  As to the legal claim, the implied covenant of good faith and fair dealing is implied by law requiring that the parties perform their contractual obligations in good faith.  *Bakker v. Thunder Spring-Wareham, LLC.,* 108 P.3d. 332, 339 (Id. 2005).  When either party to the contract "violates, nullifies, or significantly impairs any benefit of the contract," a violation of the covenant can occur.  *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.,* 289, 824 P.2d 841, 863 (Id. 1991).

      Paragraphs 6-27 of the First Amended Complaint contain more than sufficient facts to form a basis for the breach of the implied covenant claim.  Obendorf alleges that there was a contract, that a substantial portion of the contract price was based on his valid assumption that the land was irrigable and that according to Obendorf, it is not.  The Court would agree with Washington Mutual that Obendorf did not *specifically* incorporate into Count Two the allegations from paragraphs 43-50, which form the basis for the claim and delivery count.  However, the Court does not find that fatal.  Reading the complaint as a whole, it is clear that Obendorf is asserting in Count Two that the failure to deliver the personal property was also a breach of the implied covenant.  To hold otherwise, would be elevating form over substance.

      Washington Mutual acknowledges that in Count Three, fraudulent misrepresentation, that Obendorf has now added in the First Amended Complaint the names of the parties' agents and

approximate dates when representations were made that the property had valid water rights and was irrigable. Also, in paragraphs 37-41 of the First Amended Complaint, Obendorf has now alleged that Washington Mutual falsely represented to his agent, Jack Prater, that certain equipment and personal property was physically located on the Nevada and Oregon properties and could be purchased for the appraised value. Obendorf alleges that he relied on these representations when purchasing the personal property, believing it would be conveyed to him upon payment of the purchased price, and it was not.

     Washington Mutual next asserts that Obendorf's fraud claim fails as a matter of law because he cannot establish that he justifiably relied on Washington Mutual's pre-contract assertions regarding the irrigation and because the question of irrigation is immaterial. *See Hines v. Hines*, 934 P.2d 20, 24 (Id. 1997) (setting forth elements of a prima facie fraud claim in Idaho, including materiality and justifiable reliance). Both arguments fail.

     Washington Mutual has not established that Obendorf's alleged reliance on Washington Mutual's pre-contract representations was unjustifiable as a matter of law. This is not a situation in which the language of the contract said precisely the opposite of the representation on which the plaintiff asserts reliance. *Compare Irwin Rogers Ins. Agency Inc., v. Murphy,* 833 P.2d 128, 131 (Id. Ct. App. 1992) (noting that the contract clearly explained that it was a promissory note and that the plaintiffs alleged the insurance agent told them it was not). Washington Mutual drafted the Agreement, saying that it was selling the land "as is" and that it took no responsibility for whether the land was irrigated. It did not draft – and Obendorf did not sign – a contract expressly stating that the land was *not* irrigated.

     Moreover, it is not clear from the pleadings whether Obendorf conducted his own

investigation.[2]  *Compare Irwin*, 833 P.2d at 131 (noting that the plaintiff did not read the contract, which plainly stated it was a promissory note, despite the opportunity to do so).  This factual issue will bear on the question of whether his reliance was justifiable

The thrust of Washington Mutual's argument seems to that there are no allegations that it intended that its representations be relied on or that it knew at the time that the representations were false, etc.  But these are all matters for proof at the trial, and not whether the facts *as alleged,* support a claim for fraudulent misrepresentation.

Finally, Washington Mutual argues that Count Four, the claim and delivery cause of action is not adequately pled.  The Court disagrees.  Washington Mutual attempts to finely parse the language of this cause of action, referencing that Obendorf could only claim title to the equipment physically located on the property at the time of closing and not all of the property that was described in appendix to the Agreement.  Again, this parse reading elevates form over substance.  Rule 8(a) only requires a plain statement of facts which would entitle the plaintiff to relief and Obendorf has met that standard by stating the Agreement listed the equipment, he paid for it, and it was not delivered to him.  Whether Obendorf can prove each element of his claim and delivery cause of action by a preponderance of the evidence will depend on the proof presented at trial.  This is not a requirement at the pleading stage, when the Federal Rules of Civil Procedure only require that you place the other party on notice of what your claims are.

**B.      Does the Express Language of the Agreement Preclude all of Obendorf's Claims?**

Washington Mutual argues that it could not have defrauded Obendorf or been mutually

---

[2]     The Court has confined itself to the pleadings and documents to which the parties do not dispute and therefore declines to consider Greg Obendorf's affidavit, which accompanies his response to the defendant's motion, and other extra-pleading material.  *See* Dkt # 27.

**Order -- Page 9**

mistaken regarding the existence of water rights because it expressly chose to make *no* statement regarding those rights in the Agreement and affirmatively disclaimed the statements it had made previously.  It urges that the Court should look solely to the Agreement to evaluate the Obendorf's claims and that the Agreement forecloses those claims.  In doing so, Washington Mutual suggests that no external evidence beyond the express language of the Agreement can now be considered about what the parties intended.  In other words, that the parole evidence rule would preclude consideration of the parties mutual understanding about the existence of water rights for the property (or on the fraud claim, that Washington Mutual knew it had no valid water rights but represented that it did to induce Obendorf to pay more for the property) and that the equipment was on the properties and ready to be delivered to Obendorf at closing.

  The Agreement indeed disclaims liability for problems with water rights and sold the land "as is."   Traditionally the parol evidence rule would bar any evidence altering the terms of a written contract.  *See Tusch Enter. v. Coffin*, 740 P.2d 1022, 1029–30 (Id. 1987).  (holding that the parol evidence rule barred evidence of oral warranties that "would vary, contradict[,] or enlarge the terms of the written contract").  Under this standard, any claims attempting to add terms or disclaim terms to a written  contract would fail.

  Contrary to the position argued by Washington Mutual that the Court is limited to the express terms of the Agreement,  the parol evidence rule does not bar evidence with respect to claims of fraud and mutual mistake.  *See id.* at 1030 n.5 (explaining that the precise evidence regarding oral warranties barred by the parol evidence rule on the contract claim *was* admissible with respect to the plaintiff's misrepresentation claim); *Mikesell v. Newworld Dev. Corp.*, 840 P.2d 1090, 1098 (Id. Ct. App. 1992) (holding that the parol evidence rule did not bar evidence of

**Order -- Page 10**

an oral agreement that modified the express terms of a written agreement where the plaintiffs asserted that the written agreement was procured by fraud).

The cases cited by Washington Mutual are not to the contrary. Neither addresses the parol evidence rule. Rather, they involve situations in which parol evidence was considered and the parties' claims simply failed. *See Irwin Rogers Ins. Agency v. Murphy*, 833 P.2d 128, 131–32 (Id. Ct. App. 1992) (considering parol evidence regarding agent's alleged statements prior to the contract, but concluding that statements did not justify reliance); *Kloppenburg v. Mays*, 88 P.2d 513, 519–20 (Id. 1939) (considering parol evidence of lies told to landowner before lease contract was signed, but determining that the lies were not material).

Under the line of authority relied on by Obendorf, it is appropriate for the Court to consider allegations in the First Amended Complaint that refer to the appraisal and the State of Nevada water certificates when it considers the fraud and mutual mistake claims in the context of a motion to dismiss based on the pleadings.

Washington Mutual has not established that the land's irrigation was immaterial to Obendorf's decision to purchase the Nevada property and the value each side associated to the property as being irrigable. Obendorf alleges that he would have paid a substantially lower price for the land if he had known it was no longer irrigated. This is supported by his allegation in the Complaint that irrigable land in Nevada is worth more than non-irrigable land. This case is distinguishable from *Kloppenburg*, 88 P.2d 513, on which Washington Mutual relies.

In *Kloppenburg*, two miners falsely asserted that they were acting on behalf of an undisclosed principal when they signed a lease with a landowner. *Id.* at 515–16. When the landowner learned that the leased land had rich mineral deposits, he sought to escape the lease.

He asserted that the miners had defrauded him by, among other things, falsely asserting that they were acting on behalf of an undisclosed principal when they were really acting on their own behalf.[3] The landowner did not demonstrate, however, that the lease contract would have differed in any way had he known who the principals really were. Accordingly, he could not establish any damages based on the alleged misrepresentations. *Id.* at 519–20.

In contrast, the First Amended Complaint alleges that irrigation was a vital or material fact. The Appraisal "indicated that 1,467.06 acres of the Nevada Real Property were irrigable," and the "purchase price paid by Plaintiff" reflected the assumption that the land was irrigable. For the purpose of this motion, the price of the land described in the Agreement turned, at least in part, on the irrigability of the land. Irrigability was a "vital fact" regardless of whether it was specifically mentioned in the contract. *See Thieme v. Worst*, 745 P.2d 1076, 1078, 1079 (Id. Ct. App. 1987) (holding that ability to *deliver* water sold in a contract was material, despite the fact that the contract in question did not discuss delivery). Taking the factual assertions of the complaint as true, then, it is clear that Washington Mutual is not entitled to judgment as a matter of law on the claim of fraud. *McGann v. Ernst & Young,* 102 F.3d 390, 392 (9th Cir. 1996).

Washington Mutual asserts that no mutual mistake exists as a matter of law because (1) it was *ignorant* of the fact that the property was no longer irrigable, not *mistaken* and (2) irrigability was not a "vital fact" upon which the contract rested. Washington Mutual's assertions fail. The second issue is identical to the one addressed above, with respect to the fraud claim. Accordingly, the court will incorporate its analysis of that issue here and will turn to Washington Mutual's assertions regarding ignorance.

---

[3]  The landowner also asserted that the miners had an affirmative duty to reveal that they had actually discovered minerals on his land. *Id.* at 516. The court separately concluded that they had no such duty. *Id.* at 520.

**Order -- Page 12**

"A mutual mistake occurs when both parties share a misconception about a vital fact upon which they based their bargain at the time of contracting." *Thieme v. Worst*, 745 P.2d 1076, 1079 (Id. Ct. App. 1987). Taking the factual assertions in the plaintiff's complaint as true, as the Court must on a motion for judgment on the pleadings, it is clear that Obendorf has a valid claim for mutual mistake.

According to Obendorf's First Amended Complaint, "At the time Plaintiff purchased the Nevada Real Property, Defendant mistakenly believed the Nevada Real Property was irrigable and had valid water rights appurtenant to it." *See* First Amended Complaint, Paragraph 17, page 5. Washington Mutual's contrary assertion that it had formed no opinion that the land was irrigable and that it was *ignorant* of whether the property was irrigable, shows only that there is a disputed issue of fact regarding the state of mind of each participant to the transaction about the whether status of the water rights to the property, rendering judgment on the pleadings inappropriate.

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1) Defendant's Motion for Judgment on the Pleadings (Dkt # 22), filed May 1, 2007, be DENIED;

2) Plaintiff's Motion for Leave to File First Amended Complaint and Demand for Jury Trial (Dkt. # 31), filed July 3, 2007, be GRANTED.

**IT IS SO ORDERED.**



DATED: August 22, 2007

Honorable Mikel H. Williams
Chief United States Magistrate Judge

**Order -- Page 14**